UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| as Broadcast Licensee of the | § | |
| December 3, 2011 "Good v. Evil": | § | |
| Cotto/Margarito Program, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-4216-B |
| | § | |
| RALPH ZEQIRI, | § | |
| individually and, d/b/a/ RALPH'S PIZZA | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff J&J Sports Productions, Inc.'s Motion for Default Judgment (doc. 8), filed April 17, 2015. For the reasons that follow, the Court concludes that Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART.**

## I.

## BACKGROUND

This is a case about alleged violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (the FCA). Plaintiff J&J Sports Productions, Inc. (J&J) is in the business of marketing and licensing closed-circuit, pay-per-view prizefighting events to commercial establishments. Doc. 8-1, Pl.'s Ex. A, Affidavit of Thomas P. Riley (Riley Aff.) ¶ 4. As part of this business, J&J acquired the proprietary rights to exhibit and sublicense the December 3, 2011, "Good v. Evil": Angel Cotto v. Antonio Margarito WBA Super World Light Middleweight Championship

Fight Program, including the undercard and preliminary bouts (the Event). Doc. 1, Compl. ¶¶ 1, 5. It then marketed and distributed exhibition rights to the Event to commercial locations throughout Texas in exchange for a fee. *Id.* at ¶¶ 5, 7. To prevent unlicensed establishments from exhibiting the Event without a license, the transmission was electronically coded or "scrambled." *Id.* at ¶¶ 8–10. Establishments that had bought the broadcast rights were provided with electronic decoding equipment to unscramble the signal. *Id.* Zeqiri did not obtain a license, but nevertheless broadcast the Event to the patrons of his establishment, Ralph's Pizza, on December 3, 2011, according to J&J. *Id.* at ¶ 11.

On November 26, 2014, J&J filed this case against Zeqiri, alleging he willfully violated the FCA for commercial gain. *Id.* at ¶¶ 12–15. It asks for statutory and additional damages under the FCA; a permanent injunction preventing Zeqiri from intercepting or exhibiting future J&J programs without a license; court costs; attorney's fees; and pre and post-judgment interest. *Id.* at 4–5.

J&J served Zeqiri with its Complaint on January 15, 2015. Doc. 5, Aff. of Service 2. Nothing in the record indicates Zeqiri ever responded. Accordingly, J&J requested the court clerk make an entry of default on April 17, 2015. Doc. 8, Request for Clerk to Enter Default. That same day, it moved the Court for a default judgment. Doc. 9, Mot. for Default J. Three days later, the court clerk issued an entry of default. Doc. 9, Clerk's Entry of Default. Now the Court considers J&J's Motion for Default Judgment. To date, Zeqiri has not made an appearance in this case.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff. Fed. R. Civ. P. 55(a)–(b). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. First, courts consider whether the entry of a default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The relevant factors include:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4]whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v.*

*Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing this, courts should assume, that due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* But "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Normally, courts should not award damages without a hearing, unless detailed affidavits establish the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But if it can determine the amount of damages with mathematical calculation, by referencing the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

Applying this three-part analysis, the Court ultimately concludes that a default judgment here is (1) procedurally warranted; (2) supported by a sufficient factual basis in J&J's Complaint; (3) and that, because the Court can determine the amount of damages with mathematical calculation by referencing information in the pleadings and supporting documents, a hearing is unnecessary. *See James*, 6 F.3d at 310. Thus, J&J is entitled to a default judgment against Zeqiri for his alleged FCA violations in the amount of $7,000—$6,000 in statutory violations plus $1,000 in attorney's fees.

A.    *Whether An Entry of Default Judgment Is Procedurally Warranted*

After applying the six *Lindsey* factors to J&J's Motion, the Court determines that default

judgment is procedurally warranted. First, Zeqiri has not filed any responsive pleadings, so there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Second, Zeqiri's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, given that Zeqiri has had almost a year to either file an answer to Plaintiff's Complaint, or else explain why he has not done so, the grounds for default are clearly established. *Cf. Elite v. The KNR Group*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to suggest Zeqiri's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, J&J seeks only the relief the law provides it, and Zeqiri has no applicable defense to its claims, at least as far as this Court can see, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default, if it were challenged by Zeqiri.

B.    *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Defendant is deemed to have admitted the allegations set forth in Plaintiff's Complaint. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for Plaintiff's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In

conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

J&J alleges Zeqiri "willfully intercepted and/or received the interstate communication of the Event," or, alternatively, "assisted in the receipt of the interstate communication of the Event." Doc. 1, Compl. ¶ 11. Then, according to J&J, Zeqiri "transmitted, divulged and published [the Event] . . . to patrons within [his establishment] . . . willfully and with the express purpose and intent to secure a commercial advantage and private financial gain. *Id.* at ¶¶ 11–12. This not only "infringed upon [J&J's] exclusive rights" to broadcast the Event, *id.* at ¶ 12, but also violated 47 U.S.C. §§ 553 and 605, *id.* at ¶ 16, according to J&J.

A person violates 47 U.S.C. § 605 when he "intercept[s] any radio communication . . . or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a)(6). A person violates 47 U.S.C. § 553 when he "intercept[s] or receive[s] or assist[s] in intercepting or receiving any communications service offered over a cable system" without authorization. *Id.* § 553(a)(1). And when a person intercepts satellite or cable transmissions without authorization, he violates both sections. *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769,

774 (S.D. Tex. 2002). Here, J&J alleges the Event was transmitted via an "electronically coded or 'scrambled'" satellite signal, and that Zeqiri intercepted it without authorization and exhibited it to patrons of his establishment for his own commercial benefit. Doc. 1, Compl. ¶¶ 8–12. After reviewing the Complaint, the Court concludes that J&J's allegations state a viable claim for relief and are sufficient to provide Zeqiri with "fair notice" of its claim that he "transmitted, divulged and published [the Event] . . . to patrons within [his establishment]" in violation of the FCA. *Id.* at ¶ 11.

C.      *Damages*

        "A defendant's default concedes the truth of the [Complaint's] allegations . . . concerning [his] liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2002)). Ordinarily, a Court must hold a hearing to establish damages. *See United Artists Corp.*, 605 F.2d at 857. But this is not always the case. If pleadings, affidavits, and supporting documents allow a Court to determine damages by mathematical calculation, a hearing is unnecessary. *Id; James*, 6 F.3d at 370.

        Here, J&J alleges Zeqiri violated section 605 of the FCA, which allows aggrieved parties to choose between receiving statutory and actual damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages call for an award between $1,000 to $10,000, per violation, as the Court finds just. *Id.* § 605(e)(3)(C)(i)(II). If a Court finds a defendant violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may increase the damage award by up to $100,000, at its discretion. *Id.* § 605(e)(3)(C)(ii). In any event, an aggrieved party who prevails receives full costs, including reasonable attorney's fees. *Id.* § 605(e)(3)(B)(iii).

        1.      Statutory Damages

J&J maintains that "it would be impossible to determine the full extent of the profits" it lost and "the additional damages sustained . . . as a result of [Zeqiri's] unlawful actions." Doc. 8, Pl.'s Mot. for Final Default J. (Pl.'s Mot.) ¶ 7. For that reason, it requests statutory, rather than actual, damages, asking for $10,000—the statutory maximum—against Zeqiri.[1] *Id.* at 9–10. J&J argues it is entitled to the maximum because, as a result of Zeqiri's actions, it lost revenue, was denied the "'value, benefits and profits [it would have] derived from the unauthorized broadcast of the Event[,]" and lost out on "the value of [th]e 'business investment, business opportunities and goodwill'" it might have otherwise enjoyed. *Id.* at ¶ 8 (quoting *Am. Television & Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986)).

To support these assertions, J&J presents an affidavit from Thomas P. Riley, whose firm was charged with "the discovery, investigation and prosecution of claims arising from the theft or piracy of . . . [the Event]." Doc. 8-1, Pl.'s Ex. A, Riley Aff., App. 5. Riley insists Zeqiri's actions threaten J&J's existing and ongoing viability. *Id.* at 7–9. He explains that, by broadcasting sports events like this one without obtaining a required license, Zeqiri and other proprietors are effectively able to either not charge their patrons a fee, or else charge them a fee less than what other, authorized establishments are required to charge. *Id.* at 7–8. This causes establishments that lawfully broadcast programs to lose business, patrons, and, ultimately, the ability to contract with J&J to obtain future licenses to broadcasts. *Id.* In sum, Zeqiri's actions damaged the goodwill and reputation of J&J, and impaired both its right and ability to control and receive fees for transmitting its programs. *Id.*

---

[1] The Court notes that J&J cannot recover under both sections 553 and 605, even if it can demonstrate Zeqiri violated both. *Al-Waha Enters.*, 219 F. Supp. 2d at 775. Therefore, the damages inquiry will focus only on section 605, which allows J&J a greater recovery. *Id.*

Courts have assessed different amounts of statutory damages when presented with violations similar to Zeqiri's. *See Joe Hand Promotions, Inc. v. Alima*, No. 13-CV-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (awarding base statutory damages in the amount of $5,000); *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (same); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 10-CV-2006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) ($10,000); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 ($5,000). Here, considering the need to deter future FCA violations, and the fact that Zeqiri would have faced a sublicensing fee of approximately $1,200 had he actually paid to lawfully broadcast the Event, the Court determines that $5,000 in statutory damages is reasonable. *See* Doc. 8-1, Ex. A-2, Aff. of Ana Saldana (Saldana Aff.), App. 21 (capacity of the establishment is approximately sixty people); Doc. 8, Ex. A-3, Rate Card, App. 26 (rate for establishment with 0–100 minimum seating is $1,200); *see, e.g.*, *Al-Waha Enters.*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the FCA].""). Accordingly, the Court **GRANTS** J&J's request for statutory damages and awards it $5,000.

2.    Additional Damages

J&J requests an additional $50,000 in damages under to 47 U.S.C. § 605(e)(3)(C)(ii), based on its allegation that "[Zeqiri's] actions were willful and 'for purposes of direct or indirect commercial advantage or private financial gain.'" Pl.'s Mot. ¶ 12 (citations omtted). J&J presents no evidence demonstrating Zeqiri willfully violated the FCA, but insists he could not have "innocently" accessed the Event broadcast given how complex it is to intercept a transmission. *Id.* at ¶ 13. Courts have

generally found this reasoning persuasive, as there are limited means by which defendants can access closed-circuit, pay-per-view events, and because it would be unlikely for an establishment to intercept such broadcasts by chance. *See Al-Waha Enters.*, 219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Q Café, Inc.*, 2012 WL 215282, at *5 (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). Based on this line of cases, the Court likewise concludes that J&J's evidence and allegations are sufficient to support a finding of willfulness.

Further, the record indicates that Zeqiri exhibited the Event for either direct or indirect commercial gain, as there were approximately three patrons in his restaurant the evening in question. Doc. 8-1, Ex. A-2, Saldana Aff., App. 21. While nothing indicates Zeqiri's establishment charged these patrons a cover for admission, it did sell them food and beverages. *Id.* at 20; Doc., 8, Pl.'s Mot. ¶ 16. This has been enough for other courts to find a commercial motive. *See Beck*, 2013 WL 5592333, at *2 (finding commercial motive based on the fact that "patrons purchased food and/or drinks while viewing the Event" and because "it is obvious that commercial establishments show sports programs to draw business, not out of charity"). It is enough for this Court, as well; there is sufficient evidence to establish Zeqiri had a commercial motive.

Having found willfulness and commercial motive, the Court moves to the statute's language.

The FCA allows "the court, in its discretion," to "increase the award of damages, whether actual or statutory, by an amount of not more than $100,000" for willful violations. 47 U.S.C. § 605(e)(3)(C)(ii). This leeway has led courts to different approaches and results. *See, e.g.*, *Alima*, 2014 WL 1632158, at *5 (awarding four times the statutory base award as additional damages where defendant charged a cover and showed the event on nine screens to approximately 85 to 125 patrons); *Q Café, Inc.*, 2012 WL 215282, at *5 (awarding five times the statutory base award where the defendant broadcast the event in an urban area and the Court noted the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *3 (awarding three times the base because defendant did not charge a cover charge, only thirty patrons viewed the event, and defendant was not a repeat offender); *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (awarding three times the base for a willful violation); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001) (awarding five times the base statutory amount because defendant advertised the event, charged a cover, and showed the event on five television monitors). Here, J&J provided evidence of an auditing visit, where investigator Saldana observed Zeqiri violating the FCA. Doc. 8-1, Ex. A-2, Saldana Aff. App. 20–21. Though the affidavit notes that Zeqiri's establishment was equipped with three televisions, it is not clear whether the Event was displayed on one, two, or three screens. *Id.* Either way, only three patrons were in attendance, and nothing indicates Zeqiri charged them, or the investigator, a cover, or that he advertised his establishment as broadcasting the Event in order to attract a greater audience. *Id.*

Based on the damages awarded by other courts, the evidence currently before this Court— (which reveals that only approximately three patrons were present at Zeqiri's establishment—and

the need to deter future violations, the Court finds that an additional damages award of $1,000 is reasonable. Thus, the Court **GRANTS** J&J's request for additional damages and awards it $1,000.

    3.    <u>Attorney's Fees and Costs</u>

Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii). Here, that is J&J, who seeks a one-third contingent fee or, alternatively, $1,000 worth of attorney's fees. Doc. 8, Pl.'s Mot. ¶ 19 n.7; Doc. 8-1, Ex. B, Affidavit of David M. Diaz (Diaz Aff.), ¶¶ 5-8, App. 29–32. To support its request, it presents an affidavit from its counsel, David M. Diaz, who estimates his fee at $1,000, based on approximately four hours of work a rate of $250 per hour. *Id.* at ¶ 8, App. 31–32. Given this estimate, as well as the evidence and circumstances of the case, the Court finds J&J's request for $1,000 in attorney's fees to be more reasonable than a one-third contingent fee.

The Fifth Circuit has described the procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cnty*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or

contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

Although J&J has not offered invoices or other evidence proving Diaz worked the number of hours he claimed he did on this case, the Court accepts his estimate of his time and rates as reasonable, given his experience with anti-piracy cases and the authorities he provides. Doc. 8-1, Ex. B, Diaz Aff., App. 27–34; B-2; Doc. 8-1, Ex. B-1, David Diaz Resume, App. 36; *id.* at 37-39 (explanation of Martindale-Hubell Rating System); Doc. 8-1, Ex. B-2, Texas Lawyer's Annual Salary & Billing Report, App. 40–48. Accordingly, the Court makes no adjustment to these figures and **GRANTS** J&J's request for $1,000 in attorney's fees.[2]

Though J&J is entitled to recover costs under the statute, as well, it has not requested a specific amount, nor has it put forth any evidence on the issue. As a result, the Court is unable to determine how much to award, or even how to go about calculating that figure. For that reason, it **DENIES** J&J's request for costs at this time, though J&J may provide supplementary briefing and evidence establishing the amount of costs it seeks at a later time.

4.   Permanent Injunction

---

[2] In its proposed order, J&J also includes several conditional grants of attorney's fees for potential post-judgment and appellate work. Doc. 8-2, Proposed Order 2. Although J&J does not expound upon this request in its Motion, the affidavit of its counsel, David Diaz, lists various requests for fees that are contingent upon the occurrence of post-judgment events. Pl.'s Ex. B, Diaz. Aff., App. 34. For example, J&J seeks a conditional award of $10,000 to be granted should Zeqiri file a "post-judgment, pre-appeal motion," such as a motion to vacate. *Id.* Because this Court has granted reasonable attorney's fees for the work actually performed, and because J&J has presented no argument or evidence establishing the reasonableness of these additional contingent fees, the Court denies this request.

Lastly, J&J requests a permanent injunction against Zeqiri to prevent him "from ever intercepting or exhibiting an unauthorized program in violation of the [FCA]." Doc. 8, Pl.'s Mot. 10. Under the FCA, a court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the Act. 47 U.S.C. § 605(e)(3)(B)(i). But J&J provides no support for its request, and the Court finds an injunction is unnecessary to the extent it is merely intended to prevent Zeqiri from violating the FCA. The Court therefore **DENIES** J&J's request for a permanent injunction.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** J&J's Motion for Final Default Judgment (doc. 8). In particular, the Court:

- **GRANTS** J&J's request for statutory damages in the amount of $5,000 and for additional damages in the amount of $1,000, for a total award of $6,000;

- **GRANTS** J&J's request for attorney's fees in the amount of $1,000;

- **DENIES** J&J's request for costs of court, pending supplemental briefing;

- **GRANTS** J&J's request for post-judgment interest at the rate of 0.31% on all amounts awarded herein; and

- **DENIES** J&J's request for a permanent injunction.

If J&J is able to provide supplementary briefing and evidence to support its request for court costs, it is **ORDERED** to do so by **October 19, 2015.**

SO ORDERED.

SIGNED: October 7, 2015.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE